IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| THOMAS AMMONS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>LA-Z-BOY INCORPORATED,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 1:04-CV-67-TC-SA |

Defendant La-Z-Boy Incorporated brought two motions for partial summary judgment against various Plaintiffs. First, La-Z-Boy argues that the claims brought by Jeremy Garcia, Jason Anderson, Jamie Buttars, and Brenda Mokuau are barred by the statute of limitation. La-Z-Boy also argues that Wade Peterson, Heidi Scott, and Jeremy Garcia are barred from bringing suit because they failed to report the lawsuit as an asset during their bankruptcies. After considering the parties' arguments, the court **DENIES** the motion for summary judgment based on the statute of limitations because the filing of a class action tolled the statute and **GRANTS SUBJECT TO A STAY** the motion for summary judgment based on previous bankruptcy filings because the Mr. Peterson, Ms. Scott, and Mr. Garcia are not real parties in interest. The trustees of their respective bankruptcy estates are, however, real parties in interest and will be given an opportunity to be substituted as plaintiffs in this case.

## BACKGROUND

This suit was filed on April 9, 2004, in Utah state court on behalf of Plaintiffs Marilyn

Touchard, Thomas Ammons, Felix Barela, Oscar Garcia, Dennis Nelson, Wade Peterson, Frank Ross, and Heidi Scott (the "2004 Complaint"). The 2004 Complaint described working conditions and policies at La-Z-Boy's facility that allegedly caused violations of Utah law. In addition, the complaint stated "[s]o many employees were affected by La-Z-Boy's policies that it is not possible to name all of them," "there are questions of law and fact which are common to all of these employees," and "[t]he Plaintiffs are typical of that class of people who have been victims of La-Z-Boy's intentional failure to maintain a safe workplace, and its practices and policies of terminating employees who become injured on the job and require Workers' Compensation benefits, or who protest these practices and policies." (Docket No. 1, Ex. A, at 10.) It also purported to assert its first cause of action (wrongful termination in violation of public policy) on behalf of "each of the named Plaintiffs, as well as other individuals not named here who worked for La-Z-Boy, were either discharged, or constructively discharged from their jobs at La-Z-Boy." (Id. at 46.) On May 5, 2004, La-Z-Boy filed a notice of removal to federal district court based on diversity of citizenship.

On January 10, 2005, La-Z-Boy filed a motion for judgment on the pleadings, arguing that the complaint did not state a claim under Utah law. On April 12, 2005, following briefing of the motion and a hearing, the court granted the parties' motion for certification of a question of law to the Utah Supreme Court.[1]  On May 3, 2005, the court granted the parties' stipulated motion to stay all deadlines until the Utah Supreme Court ruled on the certified question of law.

---

[1]The court certified the question of whether termination of an employee in retaliation for the exercise of rights under the Utah Workers' Compensation Act implicated a clear and substantial public policy of the State of Utah that would provide a basis for a claim of wrongful termination in violation of public policy.

The Utah Supreme Court issued its ruling on November 20, 2006, holding that Utah law did recognize a cause of action for wrongful termination when an employee is terminated for seeking worker's compensation. On January 15, 2007, the Plaintiffs filed a motion to amend their complaint. The motion to amend was granted on October 24, 2007 and the amended complaint was filed on November 20, 2007. On April 15, 2008, the Plaintiffs moved for class certification. That motion was denied on December 5, 2008.

Several Plaintiffs filed for bankruptcy before this suit was filed on April 9, 2004. Jeremy Garcia filed for bankruptcy on March 13, 2001, and his case was closed on August 28, 2001. He was not a plaintiff when the case was filed in April of 2004 and testifies that he had no knowledge of the case until 2008. Wade Peterson filed for bankruptcy on October 31, 2002 without listing any pending claims on his schedules (although he filed an administrative ADA charge before the bankruptcy, he has never sued on that charge). Mr. Peterson's debts were discharged on February 26, 2003. His bankruptcy was closed on May 18, 2006. Heidi Scott filed her schedules on September 29, 2003. Her debts were discharged on January 28, 2004 and the case was closed on March 3, 2004.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Justice v. Crown Cork and Seal Co., Inc., 527 F.3d 1080, 1085 (10th Cir. 2008). The court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Seegmiller v.

LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008).  "A mere scintilla of evidence in support of the nonmoving party's position, however, is insufficient to create a genuine issue of material fact."  Grace United Methodist Church v. City Of Cheyenne, 451 F.3d 643, 649 (10th Cir. 2006).  In this diversity action, the court applies the substantive law of the forum state, in this case Utah.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## ANALYSIS

1.  Tolling of the Statute of Limitations

The Plaintiffs' third amended complaint included claims made by individuals who were not party to the original complaint, including Jeremy Garcia, Jason Anderson, Jamie Buttars, and Brenda Mokuau.  In Utah, tort claims are governed by a four year statute of limitations.  Utah Code Ann. § 78B-2-307.  La-Z-Boy maintains that each of the above named Plaintiffs is barred by the statute of limitations because their claim accrued more than four years before they joined this suit.  Federal courts sitting in diversity are obliged to apply state law to limitations questions.  See Walker v. Armco Steel Corp., 446 U.S. 740, 753 (1980).

It is well established that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."  American Pipe & Const. Co. v. Utah, 414 U.S. 538, 553 (1974).  In Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345, 347 (1983), the Supreme Court extended this rule to allow tolling for plaintiffs who file individual suits after a motion for class certification is denied.  The tolling applies to all potential plaintiffs "until after the denial of the class certification motion or until they chose not to continue as a class member.  At that juncture, the statute of limitations begins running again."  State Farm Mut.

Auto. Ins. Co. v. Boellstorff, 540 F.3d 1223, 1228-29 (10th Cir. 2008). Consequently, although the court denied class certification, class action tolling may still be applicable. It is clear that should the class action tolling doctrine apply, Mr. Garcia, Mr. Anderson, Mr. Buttars, and Ms. Mokuau have made timely claims. But La-Z-Boy maintains that a class suit was not properly brought until the filing of the second amended complaint and, accordingly, the statute of limitations was not tolled until November 20, 2007. Relatedly, La-Z-Boy maintains that the class description provided in the complaint was not sufficient to provide notice of the potential claims and therefore cannot support tolling. See Davis v. Bethlehem Steel Corp., 769 F.2d 210 (4th Cir. 1985).

It is undisputed that the 2004 complaint did not comply with the United States District Court for the District of Utah's Rules of Practice. Local Rule 23-1 governs class action suits. It requires that a proposed class action complaint include a "class allegation section." DUCivR 23-1. Nor did the 2004 Complaint contain a clear title indicating that it was being filed as a class action. But there is no question that since the inception of the suit, La-Z-Boy was aware that the Plaintiffs intended to pursue class action certification.

The Plaintiffs maintain that even though the complaint was not organized in accordance with the locals rules,[2] it contained the substance required by the rules and met the requirements for class action tolling as applied by the United States Supreme Court. The Supreme Court explained the rationale for the class action tolling doctrine in Crown, Cork & Seal:

> Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a

---

[2]The complaint was originally filed in Utah state court. The Utah Rules of Civil Procedure do not include provisions analogous to DUCivR 23-1.

>class action is commenced. Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims. And a class complaint notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. The defendant will be aware of the need to preserve evidence and witnesses respecting the claims of all the members of the class. Tolling the statute of limitations thus creates no potential for unfair surprise, regardless of the method class members choose to enforce their rights upon denial of class certification.

462 U.S. at 352-53 (citations and quotations omitted). The Utah Supreme Court, which adopted the rule in American Pipe, has explained,

>The commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action . . . . [A]s long as the purported class is representative of all claims such that the defendant has adequate notice, then tolling serves to avoid duplication of litigation, promote justice, do equity, and generally further the judicial efficiency and economy that class actions are designed to promote.

Am. Tierra Corp. v. City of West Jordan, 840 P.2d 757, 761-62 (Utah 1992) (quotations and citations omitted) (emphasis added). "Statutes of limitation are intended to protect defendants from being unfairly surprised by the appearance of stale claims, and to prevent plaintiffs from sleeping on their rights. These ends are met when a class action is commenced." Joseph v. Wiles, 223 F.3d 1155, 1167-68 (10th Cir. 2000) (citation, quotation, and alteration omitted).

Class action tolling is legal, not equitable, in nature. Id. at 1166. Consequently, there is no obligation for a plaintiff to demonstrate that he or she knew of the pending class action in order to benefit from tolling. Schimmer v. State Farm Mut. Auto. Ins. Co., 2006 WL 2361810, 6 (D. Colo. 2006) ("Indeed, the putative class member's subjective understanding of the litigation—or awareness of its existence—is completely irrelevant with regard to the application

of class action tolling."). In contrast to equitable tolling, which is driven by fairness considerations, class action tolling "is the legal tolling that occurs any time an action is commenced and class certification is pending." Joseph, 223 F.3d at 1166-67.

The question for the court is whether the 2004 complaint began a class action for purposes of tolling the statute of limitations. La-Z-Boy says that it did not because the 2004 complaint "did not purport to assert claims in a representative capacity; . . . failed to comply with basic state and federal class action pleading formalities; and . . . did not request certification of a class or class relief." (Def.'s Mem. in Supp. Summ. J., at 9.) But La-Z-Boy sets too high a bar for class action tolling. In American Pipe, the Supreme Court explained,

> The policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights, are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of <u>the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment</u>. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

414 U.S. at 554-55 (citations and quotation omitted) (emphasis added).

It is clear from reading the 2004 Complaint that the Plaintiffs intended to file a class action complaint. It includes a section containing general allegations describing "that class of people who have been victims of La-Z-Boy's intentional failure to maintain a safe workplace, and its practices and policies of terminating employees who become injured on the job and require Workers' Compensation benefits, or who protest these practices and policies." (Docket No. 1, Ex. A, at 3-10.) In stating the claim for wrongful termination in violation of public policy (the only claim remaining in this case), the 2004 Complaint claimed to allege the cause of action

7

on behalf of "each of the named Plaintiffs, as well as other individuals not named here who worked for La-Z-Boy, were either discharged, or constructively discharged from their jobs at La-Z-Boy." (Id. at 46.) La-Z-Boy was on notice that the Plaintiffs intended to pursue a class action and that the class would potentially include all those who claimed that La-Z-Boy had retaliated against them for seeking Workers' Compensation benefits. This information was sufficient for La-Z-Boy to ascertain the number and generic identities of the potential plaintiffs.[3] Furthermore, former La-Z-Boy employees who were aware of the suit would have had notice that a complaint had been filed on their behalf and, therefore, former employees cannot be accused of sleeping on their rights. This is all that the law requires.

La-Z-Boy argues that changes to the Plaintiffs' proposed class definition at different stages of the litigation denied La-Z-Boy the notice required for tolling the statute of limitations. This argument is misplaced. Such changes in proposed class definitions are commonplace in litigation under Rule 23. The law protects defendants from unfair surprise in these situations by permitting tolling only for those plaintiffs who fall under the *narrowest class definition advanced*. Sawtell v. E.I. du Pont de Nemours and Co., Inc., 22 F.3d 248, 253-54 (10th Cir. 1994); Smith v. Pennington, 352 F.3d 884, 894 (4th Cir. 2003) (relying on Sawtell in holding "that when a plaintiff moves for class certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition"). It is an unreasonable remedy to withdraw tolling from all plaintiffs, even those who sit squarely within the narrowest class

---

[3] The law does not require that a defendant be able to positively identify each potential Plaintiff by name for tolling to occur.

definition.[4]

La-Z-Boy relies on the concurrence of Justice Powell in Crown, Cork & Seal Co., 462 U.S. at 354-55. But the concurrence addressed the problem of potential plaintiffs asserting claims outside the proposed class definition. Justice Powell wrote:

> The tolling rule of American Pipe is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise different or peripheral claims following denial of class status.

Id. at 354. Justice Powell was concerned with making certain "that American Pipe is not abused by the assertion of claims that differ from those raised in the original class suit," not with ensuring that the original class suit contain a more specific class definition than that dictated by American Pipe. Id. at 355.

The facts of Crown, Cork & Seal Co., which established the application of class action tolling to cases in which class status is denied, make this clear. In that case "[t]he named plaintiffs purported to represent a class of 'black persons who have been, continue to be and who in the future will be denied equal employment opportunities by defendant on the grounds of race or color.'" 462 U.S. at 347. The district court had rejected this definition because "the named plaintiffs' claims were not typical of those of the class, . . . the named plaintiffs would not be

---

[4]This is a unique situation in which years passed between the filing of the original complaint and the second amended complaint. This time delay was caused by the numerous motions filed in this case and the delay in seeking a ruling from the Utah Supreme Court. The La-Z-Boy's valid concerns regarding the long delay before the motion for certification, which contained the final proposed class definition, are better addressed by Federal Rule of Civil Procedure 23(c)(1), which requires a ruling on the certification of a class at "an early practicable time after a person sues or is sued as a class representative." By addressing these concerns by refusing to toll the statute of limitations, the court would impede the purposes of the class action tolling doctrine.

9

adequate representatives, and . . . the class was not so numerous as to make joinder impracticable." Id. at 347-48. The Court held that "[i]n this case, respondent clearly would have been a party [to the class action] if that suit had been permitted to continue as a class action. The filing of the [class] action thus tolled the statute of limitations for respondent and other members of the . . . class." Id. at 354. No member of the court was concerned that the proposed class definition was too ambiguous to constitute proper notice.[5]

Here, there is no question that the claims brought by Mr. Garcia, Mr. Anderson, Mr. Buttars, and Ms. Mokuau are encompassed by the narrowest class definition offered by the Plaintiffs. Accordingly, their claims were tolled by the filing of the 2004 Complaint and are timely.

## II. Bankruptcy Filing

La-Z-Boy argues that Plaintiffs Mr. Peterson, Ms. Scott, and Mr. Garcia do not have standing to assert their claims against La-Z-Boy because they are not a real party in interest because their claims belong to their respective bankruptcy estates. In addition, La-Z-Boy maintains that even if Mr. Peterson, Ms. Scott, and Mr. Garcia are the real parties in interest, they are judicially estopped from asserting claims against La-Z-Boy because they failed to report the existence of these claims during the pendency of their bankruptcies.

### A. **Real Party in Interest**

---

[5]La-Z-Boy relies on Davis v. Bethlehem Steel Corp., 769 F.2d 210 (4th Cir. 1985), for the proposition that the class definition offered by the Plaintiff was insufficient to constitute notice. Davis, in which the original suit was brought by "forty-one named black plaintiffs alleg[ing] thirty-seven broad pattern and practice charges of discrimination against 6,000 black employees" and certification was denied by the district court because none of the forty-one named plaintiffs alleged an injury to himself, is easily distinguishable from this case. Id. at 211.

The Bankruptcy Code makes clear that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1). "Causes of action belonging to the debtor fall within this definition." Sender v. Buchanan (In re Hedged-Investments Associates, Inc.), 84 F.3d 1281, 1285 (10th Cir. 1996). "Legal and equitable interests include causes of action that a debtor could have asserted on the petition date even if they were not disclosed in the debtor's schedules." In re Lehosit, 344 B.R. 782, 784 (Bankr. N.D.W. Va. 2006) (citing Goodman v. Phillip R. Curtis Enters., Inc., 809 F.2d 228 (4th Cir.1987). Ordinarily, property of the estate not administered at the time the case is closed is abandoned to the debtor. 11 U.S.C. § 554(c). But where the property has not been scheduled as required by § 521(1), the close of the case does not abandon the property to the debtor and it remains property of the estate. Id. § 544(c) & (d).

Plaintiffs argue that their cause of action against La-Z-Boy had not accrued at the time of their respective bankruptcies and therefore was not the property of the estate. Plaintiffs maintain that the cause of action did not exist or accrue until the Utah Supreme Court officially recognized it in November of 2006. See Touchard v. La-Z-Boy, 148 P.3d 945 (Utah 2006). Plaintiffs rely on case law that makes clear that property acquired after the beginning of bankruptcy proceedings does not become part of the bankruptcy estate. See, e.g., Sender, 84 F.3d at 1285. Because, Plaintiffs argue, they did not have a "readily discernible legal interest" in the cause of action at the time the petitions were filed, the cause of action was not part of the bankruptcy estate regardless of when the events underlying the claim took place. (Plt.'s Mem. in Opp. Summ. J., at 2.)

Although the Plaintiffs' claims against La-Z-Boy were contingent on the recognition of

the cause of action, that does not mean that the claims did not exist. On the contrary, the claims were valid and could have been pursued at any time following the Plaintiffs' alleged wrongful terminations. As one court explained,

> In a chapter 7 bankruptcy case, any unliquidated lawsuits initiated by a debtor prepetition (or that could have been initiated by the debtor prepetition) become part of the bankruptcy estate subject to the sole direction and control of the trustee, unless exempted or abandoned or otherwise revested in the debtor.

In re Bailey, 306 B.R. 391, 392 (Bankr. D.D.C. 2004) (emphasis added); " In re Lehosit, 344 B.R. at 784 ("Legal and equitable interests include causes of action that a debtor could have asserted on the petition date." (emphasis added)). There is no question that before the filing of the Plaintiffs' bankruptcy petitions, they could have brought this action. "Because the claims are property of the bankruptcy estate, the Trustee is the real party in interest with exclusive standing to assert them." Wieburg v. GTE Southwest Inc., 272 F.3d 302, 306 (5th Cir. 2001).

As the Federal Rules of Civil Procedure make clear "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Mr. Peterson, Ms. Scott, and Mr. Garcia cannot prosecute these claims. But "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). The Fifth Circuit has instructed that in deciding whether an action should be dismissed under Rule 17(a), the court should consider whether the Plaintiff had a reasonable amount of time to seek substitution of the real party in interest, whether the decision to pursue the action in their own names "was the result of an understandable mistake," and the impact of the dismissal on the creditors. Wieburg, 272 F.3d at 308-09. "What constitutes a reasonable

time is a matter of judicial discretion and will depend upon the facts of each case." 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1555, at 417 (2d ed.1990).

In this case, the real parties in interest, the trustees, have not had notice of these claims nor an opportunity to assert their rights. Dismissal would potentially prevent the bankruptcy estate from collecting on a valid claim for the benefit of the Plaintiffs' creditors. Furthermore, this case involves unusual facts which may have reasonably led the Plaintiffs to file this action in their own names. In light of the above considerations, the court **GRANTS** La-Z-Boy's motion for summary judgment, but imposes a **STAY** of the dismissal for forty-five days to permit substitution of the trustees as real parties in interest. If no motion for substitution or notice of abandonment by the trustee is filed within **forty-five days** the Plaintiffs' claims will be dismissed with prejudice.

B. **Judicial Estoppel**

La-Z-Boy argues that even if the Plaintiffs' bankruptcies were reopened and the claims abandoned by the trustee, the Plaintiffs would be estopped from asserting the cause of action because they previously denied its existence to the bankruptcy court. Application of judicial estoppel is a federal matter and is analyzed under federal law. Eastman v. Union Pacific R. Co., 493 F.3d 1151, 1156 (10th Cir. 2007).

It is well settled that when an individual denies the existence of a pending claim during bankruptcy proceedings, he may be judicially estopped from pursuing that claim.[6] Eastman, 493

---

[6] There is no question that the trustees would not be estopped from pursuing these claims because the trustees, who were not informed of the claims against La-Z-Boy, have "not engaged in contradictory litigation tactics." Eastman v. Union Pacific R. Co., 493 F.3d 1151, 1155 n.3

F.3d at 1160.  The doctrine of judicial estoppel prevents a party from taking a position in a legal proceeding (e.g. that he has no outstanding claims) and later, because his interests have changed, assuming a contrary position.  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  "Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion."  Id. at 750 (quotations and citation omitted).

      The Tenth Circuit applies a three part inquiry in determining whether judicial estoppel should be applied:

> First, a party's subsequent position must be clearly inconsistent with its former position.  Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

Eastman, 493 F.3d at 1156 (citations, quotations, and alterations omitted).  The Plaintiffs' position (that they have claims against La-Z-Boy) is inconsistent with the position presented to the bankruptcy court (that they had no claims).  They also succeeded in persuading the bankruptcy court to accept this position.

      The crucial question here is whether the Plaintiffs would gain an unfair advantage if permitted to pursue their claims against La-Z-Boy.  "Where a debtor has both knowledge of the claims and a motive to conceal them, courts routinely, albeit at times sub silentio, infer deliberate manipulation."  Id. at 1157.  Accordingly, "courts addressing a debtor's failure to satisfy the legal duty of full disclosure to the bankruptcy court have deemed such failure inadvertent or mistaken

---

(10th Cir. 2007).

only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." Id. (quotation omitted). There is no question that Mr. Peterson, Ms. Scott, and Mr. Garcia had a motive for concealing their claims (misleading their creditors). The Tenth Circuit did not elaborate on what type of knowledge was required for judicial estoppel to attach (i.e. knowledge that a claim existed or knowledge of the facts underpinning the claim). The Sixth Circuit has limited this defense to situations "where the debtor lacks knowledge of the factual basis of the undisclosed claims." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002). But, in the Eighth Circuit, "judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court." Stallings v. Hussmann Corp., 447 F.3d 1041, 1048-49 (8th Cir. 2006).

La-Z-Boy urges the court to adopt the position that when a potential plaintiff has knowledge of the facts underlying the claim and does not report the claim to the bankruptcy court, she must be estopped from asserting that claim in all cases. Such an approach would not comport with equity. Simply because a plaintiff knows she was terminated and believes that termination to be unfair does not necessarily mean that she knew she possessed a legal claim. Absent knowledge of a potential legal claim, such a plaintiff cannot reasonably be said to have manipulated the court and gained an unfair advantage in litigation. See Archuleta v. Wagner, WL 3119615, 3-4 (D. Colo. 2007) ("Inherent in an examination of the unfair advantage inquiry is the well-established maxim that the doctrine of judicial estoppel does not apply when the prior inconsistent position was taken because of a good faith mistake rather than as part of a scheme to mislead the court." (quotation omitted)). This is particularly true where, as here, the claim is truly novel and its existence not likely to be recognized by a lay person. Therefore, in

determining whether an unfair advantage has accrued, it is essential for the court to examine "whether [Plaintiffs'] failure to disclose this case in [their] bankruptcy proceeding was the result of the purposeful use of self-contradiction as a means of obtaining unfair advantage over an opposing party, or whether her failure to disclose is attributable to simple error or inadvertence." Id.

But to avoid application of judicial estoppel the Plaintiffs must demonstrate good faith mistake. As the Ninth Circuit has explained, "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 784 (9th Cir. 2001).

In this case, the positions of the Plaintiffs are different from one another. Mr. Garcia testified that he did not hear about this case until seven years after the close of his bankruptcy. La-Z-Boy has not produced to evidence to suggest that Mr. Garcia had knowledge of his legal claim during this time. Accordingly, judicial estoppel will not be applied toward Mr. Garcia should he become a real party in interest.

Mr. Peterson became a plaintiff in this suit before the close of his bankruptcy. Although his debts had been discharged, he still had an obligation to report newly discovered claims that were the property of the bankruptcy estate. By failing to amend his schedules after learning of this claim, Mr. Peterson misled the bankruptcy court. Although Mr. Peterson testifies that he believed the bankruptcy was finished shortly after its filing, Eastman makes clear that where a debtor has both knowledge of the legal claim and a motive for concealment, judicial estoppel is

appropriate. Accordingly, Mr. Peterson is estopped from asserting his claim against La-Z-Boy.

Ms. Scott became a plaintiff in this case just over a month after the close of her bankruptcy. The proximity of these events may lead to an inference that Ms. Scott had knowledge of her legal claim before the close of her bankruptcy. Importantly, Ms. Scott has not testified to the contrary. At this time the court does not have sufficient information to determine whether Ms. Scott had knowledge of her legal claim before the close of her bankruptcy. If Ms. Scott is able to regain standing in this case, the court would permit additional discovery on this issue and allow another motion for summary judgment.

## ORDER

For the reasons set forth above, La-Z-Boy's motion for summary judgment on statute of limitations grounds against Jeremy Garcia, Jason Anderson, Jamie Buttars, and Brenda Mokuau is **DENIED**. (Docket No. 306.) La-Z-Boy's motion for summary judgment on standing and judicial estoppel grounds against Wade Peterson, Heidi Scott, and Jeremy Garcia is **GRANTED SUBJECT TO A STAY**. (Docket No. 298.)

DATED this 20th day of October, 2009.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
Chief Judge